1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  SOPHIA F. LUDYJAN-WOODS,                    CASE NO. 12cv2892-LAB (WMC)

12                           Plaintiff,         **ORDER DENYING *EX PARTE***
                                                **APPLICATION FOR TEMPORARY**
13       vs.                                    **RESTRAINING ORDER OR**
                                                **PRELIMINARY INJUNCTION**
14  AMERICAN MORTGAGE EXPRESS
    CORP. dba AMERICAN MORTGAGE
15  EXPRESS FINANCIAL, et al.,

16                           Defendants.

17          Plaintiff filed her complaint on December 4, 2012. As part of that complaint, she

18  requested issuance of a temporary restraining order (TRO). The Court on December 5

19  denied the request, noting that it was not filed as a motion and did not address the standards

20  for issuance of preliminary injunctive relief.

21          On January 30, Plaintiff electronically filed an *ex parte* application seeking a TRO or,

22  alternatively, a preliminary injunction (the "Application").  The Application asks the Court to

23  enjoin a foreclosure sale of Plaintiff's home, scheduled for the next morning, and not to

24  require Plaintiff to post a bond.

25  **Legal Standards**

26          The Application goes through the analysis discussed in *Granny Goose Foods, Inc.*

27  *v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) and *Winter v. Natural Res. Def. Council,*

28  *Inc.* 555 U.S. 7, 20–24 (2008). Although the Application does not discuss it, Plaintiff could

also have relied on the formulation approved in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

It is worth remembering that neither analysis governs the process of issuing or denying a TRO. The Court exercises its discretion to grant or deny a TRO in conjuntion with principles of equity. *See Inland Steel v. United States*, 306 U.S. 153 (1939); and *Stanley v. Univ. of Southern Cal.*, 13 F.3d 1313 (9th Cir.1994). The Court also applies Fed. R. Civ. P. 65(b), which governs how and under what circumstances a TRO may be issued. Issuance of a TRO is an extraordinary remedy, and Plaintiff bears the burden of making a clear showing that it should issue. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Under the standard the Application relies on, Plaintiff must show (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) the balance of hardships tips in her favor; and (4) granting relief would be in the public interest. *See Winter*, 555 U.S. at 20–24. The Court examines all four on a flexible "continuum." *Leiva–Perez v. Holder*, 640 F.3d 962, 964–70 (9th Cir.2011). But, by the same token, Plaintiff must make a showing on all four prongs. *See Alliance for Wild Rockies*, 632 F.3d at 1135. Even though a stronger showing on one element can offset a weaker showing of another, *Leiva-Perez*, 640 F.3d at 964, all four must be shown in at least some degree.

Under the alternate formulation of *Alliance for Wild Rockies*, Plaintff would have to show (1) "serious questions going to the merits" and (2) the balance of hardships tips sharply towards her.

**Likelihood of Success on the Merits**

Plaintiff's position is that she is likely to prevail because Defendant American Mortgage Express took advantage of her when it gave her a subprime loan in October of 2005 to buy her house. She wants to modify the loan, and has tendered a settlement, but says Defendants have refused.

Plaintiff's federal claim is that Defendants failed to make disclosures required under TILA and RESPA. Her supplemental state claims are that lenders' representatives misled her into taking out a sub-prime loan "that was almost guaranteed to fail" (Application,

6:14–16); and also that Defendant Midland Mortgage has violated Cal. Civ. Code §§ 2923.5 *et seq.* by refusing to provide loan counseling, foreclosure alternatives, or mitigation options, and by arbitrarily denying her a loan modification.

The Application argues that even though the relevant statutes of limitations under TILA, RESPA, and state law have passed, she is entitled to equitable tolling "[b]ecause counsel for Plaintiff recently discovered the misrepresentations and other improper conduct of [lenders] in the origination of the Loan . . . ." (Application, 6:23–25.)

This argument for tolling fails. The availability of equitable tolling does not depend on the date a plaintiff actually discovers alleged fraud, but on the date when it could reasonably be discovered through investigation of sources open to her, had she exercised all due diligence. *See Sarantapoulas v. Bank of America, N.A.*, 2012 WL 4761900, slip op. at *4 (N.D. Cal., Oct. 5, 2012) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109 (1998); and *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000)). The argument here is that Plaintiff was presented with the terms of her loan in 2005 but didn't understand them. The disclosures and other information she says she didn't get could also have been discovered in 2005. *See Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (plaintiff was not entitled to equitable tolling of TILA claim, because nothing prevented her from examining her loan contract and the lender's disclosures in light of applicable legal requirements).  It is very likely, then, that all of Plaintiff's claims are time-barred.

As for § 2923.5, it merely creates a procedural safeguard for borrowers by requiring mortgagees (or their agents) to contact mortgagors in order to explore options to prevent foreclosure; it does not require that mortgagors actually "provide loan counseling or foreclosure alternatives, [or] mitigation options" (Application, 6:18–20), nor does it create any right to a loan modification. *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (Cal. App. 4 Dist., 2010). Plaintiff's allegations don't suggest that Defendants refused to talk to her about possible loan modification; rather, the Application alleges they denied her requests.

These arguments do not establish any likelihood of success on the merits, nor even serious questions going to the merits.

**Irreparable Harm**

Plaintiff has made out a *prima facie* case for irreparable harm, since she faces loss of her home in a foreclosure sale. *See Frias v. Wells Fargo Bank*, 2013 WL 321690, slip op. at *1 (N.D.Cal., Jan. 28, 2013) (citations omitted).

At the same time, her lengthy delay in filing the Application could suggest a lack of irreparable harm. *See Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.") (internal quotation marks and citation omitted). There could be reasons why loss of a home would not constitute irreparable harm. For example, it might be clear to a homeowner that she could not afford to keep the house anyway and was only seeking to delay the inevitable.

The Court finds this factor weighs in Plaintiff's favor, though not as strongly as if she had timely filed the Application.

**Balance of Harms**

The discussion merely gives the points in Plaintiff's favor without addressing obvious problems and counterarguments. For example, it emphasizes how Plaintiff would suffer if the TRO were denied, while minimizing Defendants' harms if it were granted as temporary and minimal. This is clearly not the whole story, though.  Defendants, for example, would face increased expense if they had to reschedule the trustee sale. It is unknown whether they would ultimately receive a better price now or later, but if the TRO were granted it is certain they would face delay in getting paid. It is not at all clear, as Plaintiff argues, that their security interest in the property is adequate protection, particularly if the property value is declining.

The Application also doesn't discuss why Defendants' position wouldn't be harmed if they were forced to give her a loan modification rather than foreclosing. This is an important point, and fairly raised even by Plaintiff's own argument. It is obvious they were presented with her proposals for modification, and denied them, opting instead to sell the house at a trustee's sale. Defendants obviously thought they would be better off proceeding

1  with the foreclosure, and Plaintiff doesn't show why they were wrong, or why the benefit to

2  them would be only slight.

3  **Public Interest**

4        The discussion consists of a prediction that the house will be sold for an under-market

5  price and left vacant as a blight on the neighborhood. It isn't based on evidence, but mere

6  speculation. *See Brewer v. Landrigan*, 131 S.Ct. 445 (2010) (affirming district court's denial

7  of temporary restraining order where application was not adequately supported by evidence).

8  While it is possible this might happen, it is also possible the house might be profitably sold

9  to someone who lives in it and keeps it well-maintained. This argument falls far short of the

10  standard.

11  ***Winter* and *Cottrell* Analysis**

12        Under either standard, Plaintiff has clearly not met her burden of clearly showing that

13  a TRO is appropriate. She has hardly presented any evidence at all, but relies primarily on

14  speculation. Of the four *Winter* factors, the only one that weighs in her favor is irreparable

15  harm. She is unlikely to succeed on the merits, and has presented no evidence or even

16  convincing argument on the other two factors. She likewise fails the *Cottrell* two-factor test.

17  Her showing of irreparable harm is fairly strong, though not overwhelmingly so, but she has

18  demonstrated no serious questions going to the merits.

19  **Other Considerations**

20        **Notice**

21        Another serious obstacle to the issuance of a TRO is that Defendants were not given

22  adequate notice of it. It is possible, in fact, that they don't even know about the lawsuit at all.

23  No proof of service of process has been filed in the docket, and Defendants have not

24  appeared. Therefore, it is unclear whether they have yet been served with the summons and

25  complaint. Plaintiff's counsel represents that there have been ongoing discussions with

26  them, but that is not the same as service.

27        Even if Defendants have been served, no attorney has made an appearance for them

28  and therefore they not receiving electronic notices of documents filed in the docket.  The

Application was filed the afternoon of January 30 at 1:55 p.m. The proof of service, however, claims that the Application was served by postal mail on <u>November 27, 2012</u>, before the complaint was even filed. (Docket no. 6-5 at 1–2.) This might refer to pre-filing communication between Plaintiff's and Defendants' counsel. But whatever it refers to, it could not possibly have been the Application that is now before the Court, because the Application refers to events after November 27 and was not even signed until January 29. Nothing in the Application gives any reason to believe Defendants have been sent, shown, or told about the Application.

Under Fed. R. Civ. P. 65(b)(1), the Court can issue a TRO without notice only under limited circumstances. Those circumstances are absent here, which also requires that the Application be denied.

**Delay and Last-Minute Filing**

Plaintiff waited until the afternoon before the foreclosure sale to file this Application, even though she knew on December 5 that her earlier request had been denied and the foreclosure sale was imminent. (*See* Application, Decl. of Lennie Ann Alzate, Esq., ¶ 3 (declaring that since August 30, 2012, her office has been calling Defendants asking them to postpone the January 31 foreclosure sale).)  There might be a good and reasonable explanation for her decision to wait so long but if there is, the Application doesn't give it.

Waiting until the last possible moment to seek a TRO is strongly discouraged, particularly where, as here, it would prevent the opposing parties from presenting their side of the argument. Even assuming Defendants had been served with the Application, they wouldn't have had time to read it, then draft and file a meaningful opposition before the scheduled foreclosure sale. Such brinksmanship is unfair to opposing parties and the Court, and only adds to the reasons why the TRO must be denied. *See Lydo Enterprises v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.") *Compare Stanchart Securities Int'l, Inc. v. Gavaldon*, 2012 WL 5286952, slip op. at *3 (S.D.Cal., Oct. 24, 2012) (filing for TRO two days before event to be enjoined did not give reasonable notice).

**Conclusion**

Because the foreclosure sale is to take place immediately, denial of a TRO renders any preliminary injunction moot.  For these reasons, the Application is **DENIED**. Plaintiff's counsel is **ORDERED** to file proof of service in the docket no later than the close of business on February 1, 2013. *See* Fed. R. Civ. P. 4(l)(1).


        **IT IS SO ORDERED**.

DATED:  January 30, 2013

**HONORABLE LARRY ALAN BURNS**
United States District Judge