1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   SOPHIA F. LUDYJAN-WOODS,                    CASE NO. 12cv2892-LAB (WMC)

12                              Plaintiff,        **ORDER ON ORDER TO SHOW**
                                                  **CAUSE RE: SANCTIONS; AND**
           vs.
13                                                **ORDER OF DISMISSAL**
     AMERICAN MORTGAGE EXPRESS
14   CORP. dba AMERICAN MORTGAGE
     EXPRESS FINANCIAL, et al.,
15
                             Defendants.
16

17   **Order to Show Cause re: Sanctions**

18        On February 5, the Court ordered Plaintiff's counsel to show cause why she should

19   not be sanctioned for attempting to persuade the Court to issue a TRO by representing that

20   the Defendants she sought to have enjoined had been served, when she knew or should

21   have known it was not so. On February 13, Plaintiff's counsel filed a response (the

22   "Response"), which she supplemented on February 19.

23        Although Plaintiff's counsel appears to have made multiple missteps, the central issue

24   the OSC concerned itself with was whether Plaintiff's counsel was attempting to ambush two

25   Defendants with the TRO application, which sought to enjoin a foreclosure sale scheduled

26   for the next morning. After reviewing Plaintiff's counsel's response, the Court is convinced

27   that the missteps were accidents, rather than intended as a fraud on the Court. This does

28   not mean Plaintiff's counsel was justified in conducting the litigation as she did, but her

1  actions do not warrant sanctions. But it is apparent that Plaintiff's counsel needs to be more

2  careful in the future. She is therefore admonished as follows.

3      Plaintiff's counsel should take greater care when serving parties with process and,

4  when required, with other documents (such as the TRO application). This includes serving

5  the right parties, serving parties in a timely fashion, following the rules governing service of

6  process, and correctly designating proofs of service in the docket. The Response makes

7  clear Plaintiff's counsel's efforts at service were terribly confused. For example, it first says

8  that Midland Mortgage had no agent in California authorized to accept service of process.

9  (Response at 2:15–16.) But later, it claims she "served Midland Credit Management after

10 being advised by Steve Cassidy c/o CSC Lawyers that 'he was serving Midland Mortgage

11 at this statutory agent in California' as well as HSBC Bank at their statutory agent in

12 Sacramento, California." (*Id*. at 3:5–8.) This is almost incomprehensible, but apparently Mr.

13 Cassidy told Plaintiff's counsel either that he was Midland Mortgage's agent in California

14 authorized to accept service of process, or else that he would serve Midland Mortgage for

15 her. If it is the former, it contradicts the Response's representation that Midland Mortgage

16 had no agent in California; if the latter, it contradicts the proofs of service, which state that

17 Mr. Cassidy <u>was</u> these two Defendants' agent for service of process. In addition, the TRO

18 Plaintiff asked for would have enjoined Midland Mortgage and NDEX West.  Why Plaintiff's

19 counsel instead filed proofs of service on Midland Credit Management and HSBC Bank

20 remains unexplained.

21     Plaintiff's counsel should not have allowed months to pass before seeking a TRO on

22 the afternoon before the scheduled foreclosure sale. Such motions filed late and without

23 adequate advance notice to opposing parties are usually denied.  *See Lydo Enterprises v.*

24 *City of Las Vegas,* 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary

25 injunction is a factor to be considered in weighing the propriety of relief."); Fed. R. Civ. P.

26 65(b) (setting forth standards for issuance of a TRO without advance notice, and procedures

27 to be followed). And in this case, Plaintiff's counsel filed extremely late, leaving only a few

28 hours for the Court and opposing counsel to review the filing and hold a hearing.

The Response also blames court and chambers staff for Plaintiff's counsel's own errors. It represents that Plaintiff's counsel called the clerk's office on February 11, 2013 to inquire why they had construed the complaint in early December, 2012 as including a request for a TRO. If Plaintiff's counsel thought this was error (it wasn't), she should have inquired about it two months earlier.

The Response also claims Plaintiff's counsel had her staff call chambers and that they were told "we needed to file a proposed Order to your e-file under separate cover and that there was not enough time for a chamber hearing." [*sic*] (Response at 3:2–4 (quotation marks in original).) That violated this chambers' standing order requiring counsel to "**personally** initiate any authorized communications with the Court or with chambers staff, rather than rely on a representative (*e.g.*, a secretary or paralegal)." Chambers Standing Order, ¶ 14 (emphasis in original). Relying on non-lawyers as a conduit of communication with chambers staff heightens the risk of misunderstood and garbled communications. And that is what happened here. The remarks the Response claims it is quoting directly are not accurately reported, and in fact are almost incomprehensible. The Court's records show what actually happened is that Plaintiff's counsel's staff contacted chambers seeking a hearing date on the TRO motion. Chambers staff properly refused to give Plaintiff's counsel's staff a hearing date, because TRO applications are to be filed without obtaining a hearing date; the Court generally gives notice to the parties if it determines a hearing should be held. *See* Chambers Standing Order, ¶¶ 5 ("Temporary Restraining Orders/Motions for Emergency Relief"), 8 (*Ex Parte* Applications and Miscellaneous Administrative Requests").

While it was not the subject of the OSC, Plaintiff's counsel's pleadings generally appear to have been prepared in haste or with lack of the usual care, and are replete with typographical and grammatical errors and stylistic irregularities such as improper line spacing. While anyone, including this Court, can make an error, the irregularities are so numerous and easily seen that it creates the impression that all the pleadings were hurriedly typed and filed. By way of illustration, the "Background" section begins with the statement "On or about August 24, 2013 [*sic*] I became the attorney for Sophia F Ludyian-Woods

('herein referred to as 'Plaintiff") [*sic*] . . . ." (Response at 2:1.) This sentence is single-spaced, while the rest of the page is double-spaced.  While the Court does not intend to treat Plaintiff's counsel harshly because of these irregularities, courts have sometimes relied on error-filled briefing as indicating a general lack of care. *See, e.g., Hickey v. Scott*, 738 F. Supp. 2d 55, 73 (D.D.C. 2010) (when considering whether Rule 11 sanctions should be imposed, noting that attorney's filings "include innumerable and blatant typographical and grammatical errors that even a cursory proofread should catch").

In short, the numerous errors in this case bespeak a lack of attention and care. Plaintiff's counsel is advised to be more attentive in future.  The Response also suggests Plaintiff's counsel inordinately relied or attempted to rely on other people to guide her through the process of properly seeking a TRO. The responsibility of representing a client lies primarily with the attorney. To the extent Plaintiff's counsel might have attempted to hand off her duties to others, she was not fulfilling this obligation.

**Dismissal**

The Response represented that Plaintiff instructed her counsel "to dismiss this case without prejudice against all parties so that she can assert her rights in state court in accordance with the newly passed California Homeowner Bill of Rights." (Response, 4:3–5.) On February 22, Plaintiff's counsel filed a "Notice of Voluntary Dismissal" saying that Plaintiff "request[s] this court to dismiss all named Defendants, without prejudice in the above entitled action." (Docket no. 15 at 2:1–3.) In light of the Response's remarks, it is apparent Plaintiff intends to dismiss the entire case. No Defendant has appeared. Pursuant to Fed. R. Civ. P. 41(a), this action is therefore **DISMISSED WITHOUT PREJUDICE**.


**IT IS SO ORDERED**.

DATED:  February 26, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge